ALEXANDRA FOOTE (SBN 225695)
alexandra@wgcounsel.com
JAMISON GILMORE (SBN 322100)
jamison@wgcounsel.com
WEINBERG GONSER LLP
1100 Glendon Avenue, PH-9
Los Angeles, California 90024
Telephone: (424) 239-2850
Facsimile: (424) 238-3060

Attorneys for Plaintiffs ONE LEARNING COMMUNITY, LLC and ONE LEARNING CALIFORNIA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ONE LEARNING COMMUNITY, LLC, an Oregon limited liability company, and ONE LEARNING CALIFORNIA, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>UNBOUNDED LEARNING, INC., a New York not-for-profit corporation, CONSORTIUM ON REACHING EXCELLENCE IN EDUCATION, INC. d/b/a CORE LEARNING, a California for-profit corporation, and DOES 1 through 10, inclusive<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. MISAPPROPRIATION OF TRADE SECRETS (DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 ET SEQ.)**<br>**2. CONVERSION**<br>**3. UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200 ET SEQ.)**<br>**4. UNJUST ENRICHMENT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs One Learning Community, LLC ("One Learning") and One Learning California, LLC ("One Learning California," and together with One Learning, "Plaintiffs"), for their Complaint against Defendants UnboundEd Learning, Inc., Consortium On Reaching Excellence in Education, Inc. d/b/a CORE Learning, and DOES 1 through 10, inclusive, allege as follows:

## INTRODUCTION

1. Plaintiffs One Learning Community, LLC ("One Learning") and One Learning California, LLC bring this action against Defendants UnboundEd Learning, Inc. ("UnboundEd"),

Consortium on Reaching Excellence in Education, Inc. d/b/a CORE Learning, and DOES 1 through 10, inclusive, arising from Defendants' unauthorized use, misappropriation, copying, replication, and continued commercial exploitation of One Learning's proprietary software platform and pre-existing intellectual property, in violation of federal and California law.

2. One Learning is an educational technology company that designs, develops, hosts, and supports digital learning platforms.

3. Prior to and independent of its engagement with UnboundEd, One Learning developed a proprietary platform environment, including the codebase, architecture, workflows, and feature logic it refers to as the "One Learning Platform" (the "Platform").

4. Beginning in 2021, UnboundEd engaged One Learning under a written Master Services Agreement to deploy and operate a digital learning platform to support UnboundEd's professional development programs for educators.

5. Rather than commission a custom platform built from scratch, UnboundEd elected to leverage One Learning's pre-existing Platform, and the system deployed for UnboundEd, branded the "Digital Ecosystem," was built overwhelmingly upon One Learning's pre-existing code, with only a limited configuration and content layer customized for UnboundEd.

6. One Learning estimates that approximately 95% of the deployed platform consisted of One Learning's pre-existing intellectual property.

7. Under Article IV of the parties' written agreements, "Work Product," which UnboundEd owned as work made for hire, was distinguished from One Learning's retained "Service Provider Pre-Existing IP," which expressly included the One Learning Platform and its source code, object code, methodologies, and documentation.

8. Under Article IV.B, UnboundEd was granted only a limited, non-transferable license to use One Learning's Pre-Existing IP solely as necessary for and in conjunction with its use of the Work Product, and not separate therefrom.

9. Under Article XI of the Amendment, the parties negotiated a source code escrow mechanism under which One Learning's Pre-Existing IP would be released to UnboundEd only upon specified release conditions, including an uncured breach by One Learning, One Learning's failure

to operate as a going concern, or One Learning's bankruptcy.

10. None of those conditions ever occurred.

11. Under Article XII, the parties also agreed to a non-competition provision prohibiting UnboundEd from re-purposing or copying all or part of the software code to replicate the Platform or its features as a competing product or service.

12. After One Learning presented UnboundEd with a modest annual licensing proposal for continued use of the Platform, UnboundEd declined to license or lawfully acquire the Platform.

13. Instead, on information and belief, UnboundEd retained a third-party development firm, Learning Tapestry, and directed it to obtain One Learning's proprietary codebase from CORE Learning and used that codebase to replicate the Platform, which UnboundEd rebranded as "Digital Campus."

14. The new Digital Campus is a direct replication of the prior Digital Ecosystem and necessarily incorporates One Learning's retained pre-existing source code and intellectual property.

15. None of the contractual conditions that would have permitted release or transfer of One Learning's Pre-Existing IP occurred.

16. UnboundEd's and CORE Learning's wrongful copying, replication, and continued operation of platforms built on One Learning's Pre-Existing IP, including UnboundEd's operation of Digital Campus to conduct professional development events in California such as its Standards Institute held in Berkeley, Alameda County, and CORE Learning's operation of its Core Academy platform, constitute misappropriation of trade secrets, conversion, unfair competition, and unjust enrichment, and have caused, and continue to cause, substantial harm to One Learning.

17. UnboundEd's misconduct is ongoing and threatens to continue into the future, including at UnboundEd's forthcoming "HQIM Summit" scheduled for October 6-7, 2026, entitling One Learning to monetary damages and injunctive and other equitable relief.

**<u>THE PARTIES</u>**

18. Plaintiff One Learning Community, LLC is, and at all relevant times mentioned herein was, a limited liability company organized under the laws of the State of Oregon, engaged in the business of educational technology development, platform hosting, and related professional services,

with offices including in Bend, Oregon.

19. Plaintiff One Learning California, LLC is, and at all relevant times mentioned herein was, an entity organized under the laws of the State of California, affiliated with One Learning Community, LLC, and engaged in the business of educational technology development, platform hosting, and related professional services. One Learning California, LLC entered into the Master Services Agreement with CORE and holds the contractual rights thereunder. One Learning California, LLC has assigned and/or transferred to One Learning Community, LLC all rights to enforce claims arising from the CORE MSA, or alternatively, One Learning Community, LLC brings such claims as an affiliate and successor-in-interest to One Learning California, LLC's rights in the Pre-Existing IP.

20. Defendant UnboundEd Learning, Inc. is, and at all relevant times mentioned herein was, a New York not-for-profit corporation with its principal offices at 228 Park Avenue South, #90834, New York, New York 10003.

21. UnboundEd provides professional development programming to educators and educational agencies, including through in-person and virtual events conducted throughout the United States, including in the State of California and within the County of Alameda.

22. Defendant Consortium on Reaching Excellence in Education, Inc. d/b/a CORE Learning ("CORE" or "CORE Learning") is, and at all relevant times mentioned herein was, a California for-profit corporation with principal offices at 548 Market St - PMB 42817, San Francisco, CA 94104.

23. On information and belief, CORE is a wholly owned subsidiary of UnboundEd.

24. CORE provides professional development programming to educators through its online academy platform at academy.corelearn.com.

25. On or about September 1, 2023, CORE entered into its own Master Services Agreement with One Learning California, LLC (the "CORE MSA"), under which Plaintiffs deployed and operated a version of the Platform for CORE's professional development programs.

26. Plaintiffs are informed and believe, and on that basis allege, that Defendants DOES 1 through 10, inclusive, are individually and/or jointly liable to Plaintiffs for the conduct alleged herein.

27. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs at this time.

28. Accordingly, Plaintiffs sue Defendants DOES 1 through 10, inclusive, by fictitious names and will amend this Complaint to allege their true names and capacities once ascertained.

29. Plaintiffs are informed and believe, and on that basis allege, that each fictitiously named Defendant is responsible in some manner for the occurrences alleged herein and that Plaintiffs' damages were proximately caused by their conduct.

## JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under federal law, including Plaintiffs' claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq.

31. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the DTSA claim and arise from the same nucleus of operative fact.

32. This Court has personal jurisdiction over UnboundEd because UnboundEd transacts and solicits business in California, has purposefully availed itself of the benefits and protections of California law, and conducts professional development programming and events within California, including its Standards Institute event held in Berkeley, in Alameda County.

33. UnboundEd committed acts of misappropriation and unfair competition that were directed at and caused injury within California.

34. This Court has personal jurisdiction over CORE Learning because CORE is a California for-profit corporation with its principal offices at 548 Market St - PMB 42817, San Francisco, CA 94104.

35. CORE is headquartered in this District and provides professional development programming through its online academy platform.

36. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

37. CORE Learning is headquartered in San Francisco, UnboundEd conducted its

Berkeley Standards Institute in this District, and the Platform was operated from within this District, including to register, host, organize, and deliver the Berkeley Standards Institute.

38. The claims arise from the same transaction or occurrence, including Defendants' acquisition, copying, use, and continued operation of One Learning's Platform, and the factual and legal questions substantially overlap.

## FACTUAL BACKGROUND

### *A. One Learning's Pre-Existing Platform and Intellectual Property*

39. For years prior to its engagement with UnboundEd, One Learning developed, owned, and operated a proprietary digital learning platform environment, including the One Learning Platform, comprising source code, object code, platform architecture, workflows, feature logic, methodologies, know-how, and technical documentation developed independently of and prior to any work for UnboundEd.

40. One Learning's pre-existing Platform was the same platform infrastructure that One Learning operated in connection with its other educational-technology engagements, including an environment One Learning previously operated known as California Educators Together.

41. The source code, architecture, workflows, and feature logic comprising One Learning's pre-existing Platform are not generally known to the public or to One Learning's competitors, derive independent economic value from not being generally known, and are the subject of reasonable efforts by One Learning to maintain their secrecy, including through written confidentiality, license-scope, escrow, and non-competition provisions in its agreements.

### *B. The Master Services Agreement and the 2022 Amendment*

42. On or about February 22, 2021, One Learning and UnboundEd entered into a written Master Services Agreement (the "MSA"), pursuant to which One Learning agreed to provide services to UnboundEd under one or more statements of work ("SOWs").

43. The MSA was executed on behalf of UnboundEd by Laura Smith, Chief Operating Officer, and on behalf of One Learning by Brian Ausland, Managing Director.

44. On or about December 7, 2022, the parties executed an Amendment to the Master Services Agreement (the "Amendment"), which deleted and replaced Article IV (Intellectual

Property) of the MSA and added a new Article XI (Source Code Escrow) and a new Article XII (Noncompetition).

45. The MSA and the Amendment are collectively referred to herein as the "Agreement."

46. Under Article IV.A. of the Amendment, "Work Product," defined as the works, materials, ideas, or inventions that One Learning created while developing deliverables for UnboundEd, was deemed work made for hire and the exclusive property of UnboundEd.

47. Article IV.B. of the Amendment separately defined and protected One Learning's retained "Service Provider Pre-Existing IP" (hereinafter, "Pre-Existing IP"), meaning "all intellectual property, source and object code, information, methodologies, data, ideas, concepts, know-how, skills, techniques, and documentation" that One Learning possessed prior to the commencement of the Services or developed independently, "including Service Provider's platform 'One Learning Platform' (the 'Platform'), and any derivatives, modifications or enhancements made to any such property while performing the Services."

48. Under Article IV.B. of the Amendment, One Learning granted UnboundEd a "perpetual, royalty-free, non-exclusive, irrevocable, non-transferable without Service Provider's consent . . . and worldwide license" to use the Pre-Existing IP, but only "to the extent that Service Provider incorporates any Service Provider Pre-existing IP . . . into any of the Work Product," and only "solely as necessary for and in conjunction with UnboundEd's or its licensee's use of the Work Product (and not separate therefrom)."

49. The license did not authorize UnboundEd to extract, separate, transfer, disclose, repurpose, use, license, or otherwise exploit One Learning's retained code or Platform as a stand-alone asset or as a blueprint for a replacement build.

50. Under Article XI of the Amendment, the parties agreed that the source code and object code for both the Work Product and the Service Provider Pre-Existing IP would be deposited into escrow, and that release of the Service Provider Pre-Existing IP portion to UnboundEd would occur "based solely on one or more of the following conditions": (i) One Learning's uncured breach of the Agreement, (ii) One Learning's failure to function as a going concern or to operate in the ordinary course, or (iii) One Learning's filing of, or being subject to, an undismissed petition in bankruptcy

(collectively, the "Release Conditions").

51. Under Article XII of the Amendment, UnboundEd agreed to use the Platform solely for its intended, stated program and product focus as set forth in the applicable SOW, and further agreed that UnboundEd "may not re-purpose, copy, all or part of the software code to replicate the Platform in full or any of its individual services and/or features as a marketable product or service in competition with the Service Provider's business . . . without Service Provider's prior written consent."

52. The MSA also contained, in Article V, confidentiality obligations protecting each party's proprietary technology, inventions, techniques, processes, developments, algorithms, designs, schematics, drawings, and engineering information, and restricting the use and disclosure of such Confidential Information except as authorized by the Agreement.

### *C. One Learning's Performance and the Licensing Relationship*

53. From the outset of the parties' relationship in 2021, UnboundEd requested a platform similar in structure to One Learning's existing platform environment, with customizations to support community-group coordination for educators attending UnboundEd-led professional development events.

54. One Learning advised UnboundEd that costs could be reduced and implementation expedited by leveraging One Learning's pre-existing IP and Platform framework rather than building a fully custom platform from scratch, and UnboundEd adopted that model.

55. For approximately four years, the platform deployed for UnboundEd, branded the "Digital Ecosystem," remained overwhelmingly dependent on One Learning's retained Platform, codebase, workflows, architecture, and pre-existing IP.

56. The overwhelming majority of the work One Learning performed consisted of support, event staffing, user experience and interface updates, content layout and organization, user processing, operational process development, and project management layered on top of One Learning's pre-existing system, rather than net-new software development unique to UnboundEd.

57. One Learning's tracked project records confirm that, between approximately August 2021 and August 2025, the UnboundEd project accounted for approximately 597 work tickets, of

which only approximately 80 represented any level of development work, and of those, only approximately 6 represented specific new features unique to UnboundEd.

58. The vast bulk of the platform and its technical implementation remained One Learning's retained pre-existing IP.

59. One Learning fully performed its obligations under the Agreement, including hosting, maintaining, supporting, and operating the Digital Ecosystem and embedding its staff in UnboundEd's operations at live professional development events across the country.

60. The parties operated under successive statements of work.

61. On or about June 30, 2024, the parties entered into the Phase 7 statement of work covering the contract period July 1, 2024 through June 30, 2025, with a net total of $265,608, which included a hosted-system software licensing component.

62. For the 2025-2026 contract year, One Learning presented UnboundEd with a proposal for continued hosting, support, and licensing of the Platform in the amount of $177,975.00, covering the period July 1, 2025 through June 30, 2026.

***D. CORE Learning's Separate MSA and Platform Relationship***

63. On or about September 1, 2023, CORE entered into a separate Master Services Agreement with One Learning California, LLC (the "CORE MSA"), under which One Learning agreed to deploy and operate a version of its Platform for CORE's professional development programs for educators.

64. The CORE MSA was executed on behalf of CORE by Robert Sheffield, its Chief Executive Officer, and on behalf of One Learning California, LLC by Brian Ausland, its Director of Education.

65. Under Article IV.B of the CORE MSA, One Learning expressly retained its Pre-Existing IP and granted CORE only a limited license to use that IP "solely as necessary for and in conjunction with CORE's or its licensee's use of the Work Product (and not separate therefrom)."

66. CORE had no right to possess, use, or operate the Platform or One Learning's underlying code outside the scope of that license.

67. Under Article VII of the CORE MSA, CORE was further prohibited from re-

purposing or copying all or part of the software code to replicate the Platform or any of its individual services or features as a marketable product or service.

68. Over the course of the relationship, CORE paid One Learning for specifically tailored development services and limited technical management, hosting, and related services, not pre-existing intellectual property.

69. The CORE MSA was effective for a term beginning September 1, 2023 and ending June 30, 2025. The contract term accordingly ended on or about June 30, 2025, and no provision of the CORE MSA authorized CORE to continue using, possessing, or operating the Platform or One Learning's Pre-Existing IP after that date.

***E. UnboundEd's Exit and One Learning's Warnings***

70. UnboundEd's Chief Partnerships Officer, Scott Noon, rejected One Learning's proposal for continued hosting, support, and licensing of the Platform in the amount of $177,975.00, covering the period July 1, 2025 through June 30, 2026.

71. UnboundEd elected neither to continue licensing the Platform from One Learning nor to negotiate a lawful release or transfer of One Learning's Pre-Existing IP.

72. In the summer of 2025, One Learning expressly cautioned UnboundEd, in writing, that One Learning retained ownership of its Pre-Existing IP under the December 7, 2022 Amendment, that UnboundEd was free to extract only those items that were not part of One Learning's Pre-Existing IP, that none of the contractual conditions requiring release of One Learning's Pre-Existing IP had occurred, and that the Agreement prohibited any copying or replication of One Learning's code or features.

73. In response, Scott Noon represented, on behalf of UnboundEd, that UnboundEd "know[s] the terms of our original contract and will work with them."

***F. The Unauthorized Copying and Replication of One Learning's Platform***

74. Plaintiffs are informed and believe, and on that basis allege, that on or about August 2025, UnboundEd retained a third-party development firm, Learning Tapestry to rebuild UnboundEd's platform.

75. Plaintiffs are informed and believe, and on that basis allege, that Learning Tapestry

had previously been provided access to a GitHub repository of One Learning's proprietary codebase for a separate, ancillary project referred to as "CORE Learning," and not for any UnboundEd rebuild purpose, and that Learning Tapestry used that repository of One Learning's codebase as the basis for the UnboundEd rebuild.

76. Plaintiffs are informed and believe, and on that basis allege, that the same GitHub repository containing One Learning's proprietary codebase that Learning Tapestry used for the UnboundEd rebuild was also used for CORE Learning's platform.

77. The commits and updates for both UnboundEd's Digital Campus at campus.unbounded.org and CORE Learning's academy platform at academy.corelearn.com are intermixed in the same repository.

78. Plaintiffs are informed and believe, and on that basis allege, that because One Learning's repository was private and One Learning was the architect and owner of the Platform, Learning Tapestry was only able to create a "fork" of One Learning's code.

79. The fork remains accessible to One Learning, allowing One Learning to track and monitor use of its codebase.

80. The arrangement under which Learning Tapestry was granted access to One Learning's repository for work on the CORE platform permitted the contractor only to view the Platform's architecture and code to the extent necessary to customize CORE's instance, not to copy, redeploy, or use the underlying Pre-Existing IP for a separate platform or for UnboundEd.

81. On information and belief, Learning Tapestry used One Learning's full codebase as the basis for both the UnboundEd Digital Campus and the CORE Academy platform rebuilds, far exceeding the limited, view-only access that was authorized for CORE customization work.

82. Plaintiffs are informed and believe, and on that basis allege, that the unauthorized adaptation of One Learning's misappropriated codebase for UnboundEd is traceable to specific version-control records, including a GitHub repository dated on or about October 24, 2025, reflecting the rebranding of the platform from "Ecosystem" to "Campus."

83. Plaintiffs are informed and believe, and on that basis allege, that a legitimate, independent rebuild of the platform from scratch would have required a minimum of approximately

WEINBERG GONSER

six to ten months, and that the speed with which UnboundEd's replacement platform appeared fully operational is inconsistent with an independent build and is consistent with a direct copy of One Learning's pre-existing IP.

### *G. Deployment of "Digital Campus" and Ongoing Misappropriation, Including the Berkeley Event*

84. Plaintiffs are informed and believe, and on that basis allege, that UnboundEd deployed a replacement platform, rebranded as "Digital Campus," that is a direct replication of the prior Digital Ecosystem and that incorporates One Learning's retained source code, platform package, and pre-existing IP.

85. One Learning conducted a review of UnboundEd's newly launched Digital Campus platform and compared it to the prior Digital Ecosystem platform.

86. Based on that review, including line-by-line code tracking, related technical records, and side-by-side visual comparisons, One Learning determined that Digital Campus is a direct replication of the prior Digital Ecosystem and necessarily reflects use of One Learning's retained code, platform package, and pre-existing IP.

87. Because none of the contractually specified release conditions occurred, it would have been impossible for UnboundEd to stand up and publish a materially identical replacement platform in its present form without copying One Learning's retained code and platform package in whole or substantial part, or using One Learning's protected technical materials, workflows, and architecture as a blueprint for replication.

88. Digital Campus is not "Work Product" within the meaning of the Agreement. Digital Campus is a new platform that UnboundEd deployed after the Agreement ended, operating on a different host environment and administered by a different contractor. UnboundEd's limited license to use Pre-Existing IP "solely as necessary for and in conjunction with" the Work Product did not authorize extraction, replication, or stand-alone use of that IP in a new, separate platform.

89. Plaintiffs are informed and believe, and on that basis allege, that UnboundEd has used, and continues to use, the Digital Campus platform to conduct commercial professional development programming, including its "Standards Institute" events held in multiple states, and that each such

event constitutes continued and ongoing exploitation of One Learning's misappropriated intellectual property and increases the harm to One Learning.

90. Plaintiffs are informed and believe, and on that basis allege, that UnboundEd conducted one of its Standards Institute professional development events in Berkeley, in the County of Alameda, California, on or about June 8 through June 11, 2026 (the "Berkeley Standards Institute"), and that UnboundEd used the Digital Campus platform to register, roster, host, organize, and deliver programming and content to the educators and participants attending that event.

91. Because the Digital Campus platform incorporates One Learning's misappropriated Pre-Existing IP, UnboundEd's operation of that platform to conduct the Berkeley Standards Institute constituted the unauthorized use, reproduction, public display, and commercial exploitation of One Learning's proprietary technology within the County of Alameda, California, and caused injury to Plaintiffs in this County.

92. Plaintiffs are informed and believe, and on that basis allege, that the Berkeley Standards Institute was one of a series of in-person events at which UnboundEd commercially exploited the infringing platform, and that each such event, including the Berkeley Standards Institute, increased and continues to increase Plaintiffs' damages.

***H. UnboundEd's Threatened Continuation of Its Wrongful Conduct at the HQIM Summit***

93. Plaintiffs are informed and believe, and on that basis allege, that UnboundEd has scheduled, and is actively promoting to educators and the public, a professional development event titled "Built for Every Student: The UnboundEd HQIM Summit" (the "HQIM Summit"), scheduled to take place on October 6-7, 2026, and publicized on UnboundEd's website at https://unbounded.org/events/built-for-every-student-the-unbounded-hqim-summit/.

94. The HQIM Summit is a commercial professional development event focused on high-quality instructional materials for educators, the same category of programming that UnboundEd has historically delivered through, registered through, and supported by the platform.

95. Plaintiffs are informed and believe, and on that basis allege, that UnboundEd intends to use, promote, and commercially exploit the infringing Digital Campus platform, which incorporates One Learning's misappropriated Pre-Existing IP, to register, roster, host, organize,

deliver, and/or support the HQIM Summit and its participants, and otherwise to further its wrongful conduct in connection with the Summit.

96. Plaintiffs are informed and believe, and on that basis allege, that absent injunctive relief, UnboundEd will continue and further its wrongful conduct at and in connection with the HQIM Summit by again deploying and exploiting One Learning's misappropriated Pre-Existing IP for its own commercial benefit, thereby causing additional and irreparable harm to Plaintiffs.

97. The HQIM Summit confirms that UnboundEd's misappropriation and unfair competition are ongoing, willful, and threatened to continue into the future, and that each such event, including the forthcoming HQIM Summit, compounds and will continue to compound Plaintiffs' injury.

***I. Notice, Demand, and Failure to Resolve***

98. On or about March 20, 2026, One Learning, through counsel, sent UnboundEd a written notice of material breach and demand to cease and desist, detailing UnboundEd's misuse of licensed technology, unauthorized replication of the Platform and its features, and misappropriation of One Learning's Pre-Existing IP, and demanding that UnboundEd immediately cease and desist from all such conduct and preserve all relevant evidence.

99. In July and August 2025, Brian Ausland, on behalf of One Learning, sent written correspondence to Scott Noon, UnboundEd's Chief Partnerships Officer, warning against unauthorized use of One Learning's Pre-Existing IP. That correspondence expressly cited the CORE MSA's intellectual property provisions, including Article IV.E (Release Conditions) and Article VII (Noncompetition), and explained that those provisions prevented "any copy or replication of that code or features beyond CORE Learning's singular use for their own platform"—referring to CORE's limited license during the contract term and in conjunction with One Learning's ongoing services, not to any right to operate the Platform independently after the contract ended or to provide the code to UnboundEd.

100. In that same correspondence, One Learning warned that it would "expect to NOT find evidence of this Pre-Existing IP in use in any configuration in the new platform" and offered to negotiate a license should UnboundEd wish to have another technical team render the full platform

solution in an UnboundEd-managed environment.

101. Scott Noon responded on behalf of UnboundEd: “We know the terms of our original contract and will work with them.”

102. On information and belief, although One Learning explained to UnboundEd before, during, and after exit negotiations that One Learning retained its Pre-Existing IP and was willing to license that technology for a reasonable fee, UnboundEd has refused to pay any license fee for its continued use of One Learning’s proprietary technology and has instead unlawfully replicated and exploited that technology without authorization.

103. The parties thereafter participated in the contractual dispute-resolution process, including a senior-management meet-and-confer, but were unable to resolve the dispute.

104. UnboundEd has taken the position that it holds a perpetual, unrestricted license that entitles it to reproduce and re-deploy the entire platform, a position that is contrary to the plain terms of the Agreement and that disregards the license-scope, escrow, and non-competition provisions the parties negotiated.

105. As a direct and proximate result of Defendants’ conduct, One Learning has been damaged and will continue to be damaged, and Plaintiffs have no adequate remedy at law to prevent the continued and threatened unauthorized use, copying, and dissemination of the proprietary technology, including UnboundEd’s planned use and exploitation of the infringing platform at the forthcoming HQIM Summit and CORE Learning’s continued use of its academy platform.

## FIRST CAUSE OF ACTION

**MISAPPROPRIATION OF TRADE SECRETS**

**(Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.)**

**(Against UnboundEd Learning, Inc., Consortium on Reaching Excellence in Education, Inc. d/b/a CORE Learning, and Does 1-10, inclusive)**

106. Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 105, inclusive, as though set forth in full.

107. One Learning owns trade secrets within the meaning of the DTSA. The primary trade secret at issue is One Learning’s proprietary source code for the One Learning Platform, including

the object code, architecture, workflows, feature logic, methodologies, technical documentation, and database structures compiled from or reflecting that source code.

108. These trade secrets derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use, and are not readily ascertainable by proper means.

109. The trade secrets are related to a product or service used in, or intended for use in, interstate or foreign commerce.

110. One Learning's Platform was used to deliver professional development events and programming to educators across multiple states, including through UnboundEd's Digital Campus and CORE Learning's academy platform.

111. On information and belief, UnboundEd misappropriated One Learning's trade secrets by acquiring, using, copying, and disclosing them through improper means, including by causing or permitting Learning Tapestry to use One Learning's private GitHub repository and forked codebase to replicate the Platform and deploy Digital Campus.

112. On information and belief, UnboundEd knew or had reason to know that the trade secrets were acquired through improper means and that their use exceeded the limited license and the agreed restrictions on copying and source code release.

113. On information and belief, CORE Learning misappropriated One Learning's trade secrets by using the same forked GitHub repository and One Learning's full codebase as the basis for CORE's academy platform, and by continuing to use and operate that platform after the CORE contract term ended on or about June 30, 2025, without authorization.

114. On information and belief, CORE knew or had reason to know that the codebase was One Learning's private and proprietary technology and that the permitted use did not include stand-alone operation after the contract term.

115. On information and belief, each of the Doe defendants participated in, authorized, directed, facilitated, received, or used the misappropriated trade secrets, or acted as an agent, contractor, or co-conspirator of one or more Defendants, and each Doe defendant knew or had reason to know that the acquisition, use, or disclosure was unauthorized.

116. On information and belief, UnboundEd's misappropriation was willful and malicious because UnboundEd knew of One Learning's ownership and the contractual restrictions, was informed that no release condition had occurred and that copying was prohibited, and continued to use, operate, and exploit the misappropriated Platform after receiving notice and demand to cease and desist.

117. On information and belief, CORE Learning's misappropriation was willful and malicious because CORE knew of the same restrictions and continued to operate its academy platform after the CORE contract term ended without a license.

118. As a direct and proximate result of Defendants' misappropriation, Plaintiffs have suffered and continue to suffer actual loss, including lost licensing revenue, avoided license and transition fees, and loss of the economic value of the trade secrets.

119. Defendants have been unjustly enriched by their use, and Plaintiffs seek damages measured by actual loss, unjust enrichment, and/or a reasonable royalty.

120. Defendants' actual and threatened use of the trade secrets has caused and will cause irreparable harm, for which monetary damages are inadequate, and Plaintiffs are entitled to injunctive relief under 18 U.S.C. § 1836(b)(3).

121. Because Defendants' misappropriation was willful and malicious, Plaintiffs are entitled to exemplary damages under 18 U.S.C. § 1836(b)(3), including the remedy described in § 1836(b)(3)(C).

122. Because Defendants' misappropriation was willful and malicious, Plaintiffs are entitled to reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

123. Plaintiffs are entitled to an accounting and other relief necessary to prevent Defendants' continued use and disclosure of the trade secrets.

## SECOND CAUSE OF ACTION

## CONVERSION

**(Against UnboundEd Learning, Inc., Consortium on Reaching Excellence in Education, Inc. d/b/a CORE Learning, and Does 1-10, inclusive)**

124. Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1

through 123, inclusive, as though set forth in full.

125. Plaintiffs own and have the right to possess the Pre-Existing IP, including the source code, object code, and platform package comprising the One Learning Platform.

126. UnboundEd wrongfully exercised dominion and control over Plaintiffs' property by obtaining, copying, re-deploying, and continuing to operate One Learning's retained source code and Platform without authorization and in a manner inconsistent with Plaintiffs' ownership rights.

127. CORE Learning also wrongfully exercised dominion and control over Plaintiffs' property by using the same forked GitHub repository and One Learning's codebase to operate CORE's academy platform, and by continuing to operate the platform after the CORE contract term ended on or about June 30, 2025, without authorization.

128. Plaintiffs did not consent to Defendants' exercise of dominion and control over their property, and none of the contractual conditions that would have permitted transfer or continued stand-alone use of that property occurred.

129. As a direct and proximate result of Defendants' conversion, Plaintiffs have suffered damages in an amount to be proven at trial, including the value of the wrongfully used technology, avoided licensing fees, and the economic value of the converted property.

## THIRD CAUSE OF ACTION

## UNFAIR COMPETITION

**(Cal. Bus. & Prof. Code § 17200 et seq.)**

**(Against UnboundEd Learning, Inc., Consortium on Reaching Excellence in Education, Inc. d/b/a CORE Learning, and Does 1-10, inclusive)**

130. Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 129, inclusive, as though set forth in full.

131. UnboundEd's conduct, as alleged herein, constitutes unlawful, unfair, and/or fraudulent business acts or practices within the meaning of California Business & Professions Code § 17200 et seq., including by misappropriating One Learning's trade secrets, converting Plaintiffs' property, and unlawfully copying and re-deploying One Learning's proprietary Platform to avoid paying for a lawful license, transition, or independent development effort.

132. CORE Learning's conduct likewise constitutes unlawful, unfair, and/or fraudulent business acts or practices, including by using the same misappropriated Platform and codebase to operate its academy platform without paying for a continuing license.

133. CORE Learning used the misappropriated Platform to operate its own professional development programming through its academy platform at academy.corelearn.com, obtaining an unfair competitive advantage and avoiding the cost of licensing or independently developing the Platform.

134. As a direct and proximate result of Defendants' unfair competition, Defendants have obtained an unfair competitive advantage and have been unjustly enriched at Plaintiffs' expense, and Plaintiffs have suffered injury in fact and lost money or property.

135. Plaintiffs are entitled to restitution and to preliminary and permanent injunctive relief to prevent Defendants' continued and threatened unlawful, unfair, and fraudulent business practices, pursuant to California Business & Professions Code § 17203.

**FOURTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**(Against UnboundEd Learning, Inc., Consortium on Reaching Excellence in Education, Inc. d/b/a CORE Learning, and Does 1-10, inclusive)**

136. Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 135, inclusive, as though set forth in full.

137. By wrongfully copying, re-deploying, and continuing to exploit One Learning's Pre-Existing IP without paying for a license, transfer, or lawful independent build, UnboundEd has received and retained a substantial benefit at Plaintiffs' expense, including avoided license and transition fees and the ongoing economic value generated by its continued use of the Platform.

138. CORE Learning paid One Learning for specifically tailored development services and limited technical management, hosting, and related services, but then continued using the entire Platform that it copied after the CORE contract term without a license and without permission, thereby avoiding additional licensing fees and retaining the economic value of One Learning's Pre-Existing IP at Plaintiffs' expense.

139. It would be inequitable and unjust for Defendants to retain the benefits received without compensating Plaintiffs for the value of those benefits.

140. Plaintiffs are entitled to restitution and disgorgement of the amounts by which Defendants have been unjustly enriched, in an amount to be proven at trial.

**PRAYER**

WHEREFORE, Plaintiffs One Learning Community, LLC and One Learning California, LLC pray for judgment against Defendants UnboundEd Learning, Inc., Consortium on Reaching Excellence in Education, Inc. d/b/a CORE Learning, and Does 1 through 10, inclusive, and each of them, as follows:

1. For preliminary and permanent injunctive and other equitable relief enjoining Defendants, and all those acting in concert with them, from using, copying, reproducing, distributing, disclosing, deploying, or otherwise exploiting One Learning's Pre-Existing IP, source code, platform package, and related proprietary materials, including the continued operation of the Digital Campus platform to the extent it incorporates One Learning's Pre-Existing IP, and including any use or exploitation of such materials at or in connection with the forthcoming "Built for Every Student: The UnboundEd HQIM Summit" scheduled for October 6-7, 2026.

2. For an order requiring Defendants to return and/or destroy all copies of One Learning's Pre-Existing IP, source code, and proprietary materials in their possession, custody, or control.

3. For compensatory and general damages according to proof.

4. For special, incidental, and consequential damages according to proof.

5. For restitution and disgorgement of all amounts by which Defendants have been unjustly enriched.

6. For a reasonable royalty and/or Defendants' unjust enrichment arising from the misappropriation of One Learning's trade secrets.

7. For exemplary damages under 18 U.S.C. § 1836(b)(3), including the willful and malicious misappropriation remedy available under applicable law.

8. For an accounting of all revenues and benefits derived by Defendants from their use

of One Learning's Pre-Existing IP, the Digital Campus platform, and the CORE academy platform.

9. For prejudgment and post-judgment interest as permitted by law.

10. For costs of suit incurred herein.

11. For reasonable attorneys' fees as authorized by 18 U.S.C. § 1836(b)(3)(D) and applicable law.

12. For such other and further relief as the Court may deem just and proper.

DATED: October 2, 2026 WEINBERG GONSER LLP

By: */s/ Jamison Gilmore*
ALEXANDRA FOOTE
JAMISON GILMORE
Attorneys for Plaintiffs
ONE LEARNING COMMUNITY, LLC and ONE LEARNING CALIFORNIA, LLC

**DEMAND FOR JURY TRIAL**

Plaintiffs One Learning Community, LLC and One Learning California, LLC hereby demand a trial by jury on all issues and causes of action so triable.

DATED: October 2, 2026

WEINBERG GONSER LLP

By: */s/ Jamison Gilmore*

ALEXANDRA FOOTE
JAMISON GILMORE
Attorneys for Plaintiffs
ONE LEARNING COMMUNITY, LLC and ONE LEARNING CALIFORNIA, LLC